### BUILDING & LOAN ASSOCIATION v. JONES.

1. Where a married woman, through her husband as agent, makes application for a loan of money, and the lender has no notice that the money is not for her own use, it becomes a part of her separate estate, and therefore her bond for its repayment is a binding contract upon her which she may secure by a valid mortgage on her lands.
2. Where a married woman borrows money which is used in part in paying obligations binding upon her separate estate, the fact that she afterwards permitted her husband to use the remainder for his own purposes furnishes no evidence that the lender knew that such an appropriation was purposed.
3. A question raised by the answer, but not passed upon in the Circuit decree, considered.
4. A married woman may take and hold stock in a corporation, *e. g.*, a building and loan association.
5. General exceptions, pointing out no specific errors, and points raised only in argument, not considered.

Before FRASER, J., Greenville, October, 1889.

This was an action by the City Building and Loan Association of Greenville, S. C., a body corporate, against Rebecca G. Jones, commenced in August, 1889.    The appeal was from the following decree:

This is an action to foreclose two mortgages given by Mrs. Mollie J. Kemp, a married woman, to plaintiff.    After the date of the mortgages the real estate covered by the mortgages was conveyed by Mrs. Kemp to the defendant, Rebecca G. Jones, who had notice of the mortgages.    The defence set up is that Mrs. Kemp was a married woman when she executed these mortgages, and that they were not contracts as to her separate estate.

The first mortgage bears date November 3, 1884, covers a

tract of land containing 130 acres, and is given to secure a bond of the same date, penal sum of $1,000, conditioned to pay, not the $1,000 and interest, but certain weekly and monthly dues which Mollie J. Kemp was bound, as a holder of five shares in the stock of the plaintiff company, according to the rules thereof and the terms of the bond, to pay to its secretary and treasurer ; also, all fines, penalties, &c.    Mrs. Kemp has made various payments on her shares, and certain dues unpaid at the date of this first bond were deducted, and the balance was paid over to E. T. Kemp, who was her agent and her husband.    The second mortgage bears date October 26, 1885, and covers a tract of land containing 135 acres, and was given to secure a bond of the same date given by Mrs. Kemp in the penal sum of $2,000, to secure the payment of $1,000 and interest.    A witness, Mr. Donaldson, testifies that whatever interest Mrs. Kemp might have on the winding up of the association in the assets would be a credit on these bonds.

For both of these loans written application was made, signed by Mrs. Kemp, per E. Kemp, her husband, as her agent, as to which agency they both testify.    In both cases E. T. Kemp acted as his wife's agent, and by her authority and consent received the money, and used it for his own purposes—she used none of it, except that in both cases some unpaid dues were paid for her by him out of the money.    None of it was used on her separate estate.    The land described in the second mortgage is the same as that described in the first, though somewhat differently described.    The five shares on which the first money was borrowed was assigned also to plaintiff as collateral to secure the covenants of the bond.

The first question that might arise in this case is, whether any one, except Mrs. Kemp, the married woman, or her legal or personal representative can raise any question as to the validity of her bond.    I am inclined to the opinion that if she does not repudiate the contract, her alienee cannot do it ; and it is gratifying to learn from the evidence that her husband has endeavored, by a mortgage of his own land, to secure the defendant from any loss in consequence of these mortgages being a lien on the land

conveyed to defendant, even though she has not been able to realize anything for it.

To my mind it seems very clear that the first bond and mortgage is a contract as to the separate estate of Mrs. Kemp. It is neither more nor less than an arrangement by which she enjoyed in advance all the benefits to accrue on her five shares by giving security for the performance of her obligations to the association. If a married woman can become a shareholder in these institutions, it can hardly be contended that she cannot assume the obligations connected with it, as well as enjoy the advantages. The reason on which I sustain the second mortgage applies also to the first.

As I understand the decision, a married woman has the right to bind herself for the purchase money of property (the statute giving her the right to purchase any species of property), and to mortgage that or any other property to secure the payment. Now, when we analyze the transaction called borrowing money, it is in all respects a purchase. The same bank bills or coin is never returned and never expected to be. The money which belonged to the lender is transferred to the borrower, and becomes his property just as much as if it had been a home or a plantation. What is expected and bargained for in return is a sum of money equal in value or in amount, at the end of the time agreed upon, with interest. This exact question has never been passed upon by the Supreme Court, all the cases, as I understand them, having arisen on contracts or mortgages when the married woman has been only surety, the money borrowed never having become her own property or separate estate. In these cases before the court the money went into her husband's possession as her agent and with her consent, and used by him with her consent for his own purposes, as to which there has been no contest. The statute nowhere says that the contract shall be for the benefit of the "separate estate," and the Supreme Court has held it not necessary that it shall be for the benefit of the separate estate or expended thereon. The amount due on the first mortgage at this date is $903, and on the second is $1,436.80.

It is therefore ordered and adjudged, that the mortgaged premises described in the complaint be sold by the master, &c.

From this decree defendant appealed on the following grounds:

I. Because neither of the two contracts set forth in the complaint upon which the two mortgages herein described are founded, were made by the said Mollie J. Kemp, as to her separate estate, but that the same were made without any reference to her said separate estate, and the Circuit Judge erred in not so finding.

II. That each of said contracts not being made as to the separate estate of the said Mollie J. Kemp, and without any reference thereto, were therefore null and void, and the mortgages given to secure them are also null and void, and the Circuit Judge erred in not so holding and dismissing the complaint.

III. Because the said Mollie J. Kemp, being a married woman, could not legally become a member of the City Building and Loan Association, or make any contracts with it, except as to her separate estate, or bind herself by its constitution and by-laws, and his honor erred in not so holding.

IV. Because his honor held, and erred in holding, that the said Mollie J. Kemp, a married woman, could borrow money not as to her separate estate or with reference thereto, and could give a valid mortgage upon her land, her separate estate, for the repayment thereof.

V. Because a married woman, under the constitution and laws of this State, has no right to borrow money and mortgage her land, her separate estate, to secure the repayment thereof; unless said borrowing was as to her separate estate, or with reference thereto, or for the benefit thereof, and the Circuit Judge erred in holding that she could do so.

VI. Because, in any event, the amount found to be due was excessive.

VII. Because, under the pleadings and evidence herein, the plaintiff had no right to institute and maintain this action.

*Mr. A. Blythe*, for appellant.

*Messrs. Westmoreland & Haynsworth*, contra.

March 18, 1890.   The opinion of the court was delivered by MR. JUSTICE McIVER.   This was an action to foreclose two

mortgages of real estate, to which the defence was that the contracts which the mortgages were given to secure were made by a married woman, and not being made in reference to her separate estate, were not binding upon her. It seems that Mollie J. Kemp, being a married woman, the wife of E. T. Kemp, holding five shares of the plaintiff association, and desiring to borrow money on said shares, made an application for that purpose to the plaintiff in writing, signed "Mollie J. Kemp, per E. T. Kemp," in which she proposed to give as security for such loan a mortgage on a certain tract of land, in addition to an assignment of her said shares.    Accordingly a bond in the penal sum of one thousand dollars, conditioned for the payment of the weekly dues on said shares, as well as the weekly interest on the money borrowed, was executed by Mrs. Kemp to the plaintiff, and to secure the performance of the condition of said bond she also executed a mortgage on the land in question to the plaintiff.    The money was received from the plaintiff by E. T. Kemp, whom the evidence showed, and the Circuit Judge found, was the agent of his wife.    A part of the money was applied by the husband to the payment of the arrears of weekly dues on his wife's shares, and the balance appropriated to his own use.

Subsequently Mrs. Kemp made another application to the plaintiff in writing, signed as the previous one, for the loan of the sum of one thousand dollars, proposing to give as security therefor a second mortgage on the same tract of land.  ·This application having been granted, Mrs. Kemp executed to the plaintiff an ordinary money bond conditioned for the payment of one thousand dollars, and to secure such payment she gave to plaintiff another mortgage on the same tract of land.  This money was likewise received from plaintiff by E. T. Kemp, who again applied so much thereof as was necessary to pay the arrears of dues on his wife's shares, and appropriated the balance to his own use. After the execution of these two mortgages, Mrs. Kemp sold and conveyed the said tract of land to the defendant, who had at the time full notice of the mortgages.

The Circuit Judge held that both of the contracts, the performance of which the mortgages were given to secure, were contracts as to the separate estate of Mrs. Kemp, and were there-

fore valid and binding, and accordingly he rendered judgment of foreclosure. From this judgment the defendant appeals upon the several grounds set out in the record, which we do not deem it necessary to repeat here. The first, second, fourth, and fifth grounds, in various forms, make the single question, whether the contracts sought to be enforced were such as a married woman was capable of making, under the law as it then stood.

Since the decisions in the cases of *Greig* v. *Smith*, 29 S. C., 426; *Brown* v. *Thomson*, 31 S. C., 436; *Gwynn* v. *Gwynn*, *Ibid.*, 482; *Howard* v. *Kitchens*, *Ibid.*, 490; *Law* v. *Lipscomb*, *Ibid* ,504; and *Schmidt* v. *Dean*, *Ibid.*, 498, it must be regarded as settled, that where a married woman, either directly or through her agent, borrows money from another, the money so borrowed becomes at once a part of her separate estate, and her contract to repay the same is a contract with reference to her separate estate, which may be enforced against her; and that the lender, in the absence of notice to the contrary, has a right to assume that the money was borrowed for the use of the married woman, and she is estopped from denying that fact, unless it is shown that the lender had notice to the contrary. These cases furthermore determine that the husband may, if so authorized by the wife, act as her agent, and that the disposition which may be made of the money *after* it has been borrowed cannot affect the question. See, also, *McCord* v. *Blackwell*, 31 S. C., 125.

Under these well settled principles it is clear that there was no error on the part of the Circuit Judge. The money was borrowed by Mrs. Kemp in her own name, through her authorized agent, and there is not the slightest evidence that the plaintiff had any notice that it was really borrowed for the use of the husband. On the contrary, a part of it was, in both instances, applied to the preservation of the wife's separate estate, by paying the arrears of dues on her shares; and the fact that the husband afterwards applied a portion to his own use, cannot affect the question, in the absence of any evidence of notice to the plaintiff that the money was borrowed for the use of the husband.

The third ground of appeal presents a question which was not considered or raised in the Circuit Court, so far as appears from the "Case," and is therefore not properly before us; but as it is

contended that it was raised in the answer, although it is somewhat difficult to discover it, we may say that we do not think there is anything in it. That question is, whether a married woman could become a stockholder in a building and loan association. We do not see why not. Such an association is not a partnership; but like other joint stock associations, it issues certificates for shares of its capital stock, and this certainly is property which a married woman may purchase and hold. If, as is undoubtedly the case, a married woman may acquire, by purchase or otherwise, shares in the capital stock of a bank or a railway company, we see no reason why, in the same way, she may not own and hold shares in a building and loan association.

The sixth and seventh grounds of appeal are too general in their character, pointing out no specific error, to enable us to consider them. Several other points are mentioned in the argument here which cannot be considered, as there is nothing in the record upon which to rest them.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON. I concur in this case, constrained thereto by the recent cases decided by this court herein cited.